IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BARDY DIAGNOSTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VITAL CONNECT, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) C.A. No. 22-351-CJB <br> ) <br> ) **Demand for Jury Trial** <br> ) <br> ) <br> ) <br> ) |

# FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Bardy Diagnostics, Inc. ("BardyDx"), by and through its attorneys, and for its First Amended Complaint against Vital Connect, Inc. ("VitalConnect") alleges as follows:

## PARTIES

1. BardyDx is a Delaware corporation with its principal place of business at 316 Occidental Ave S, Suite B310, Seattle, Washington 98104.

2. VitalConnect is a Delaware corporation with its principal place of business at 2870 Zanker Road, Suite 100, San Jose, California 95134.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over BardyDx's claims arising under the United States Patent Act, Title 35, including 35 U.S.C. § 271, pursuant to 28 U.S.C. § 1331 and 1338(a).

4. The Court has personal jurisdiction over VitalConnect at least because VitalConnect is organized and exists under the laws of the State of Delaware.

5. Venue is proper pursuant to 28 U.S.C. § 1400(b) because VitalConnect is a Delaware corporation and, therefore, resides in the District.

## FACTUAL ALLEGATIONS

### BardyDx's U.S. Patent Nos. 11,051,743 and 11,445,967

6. BardyDx was founded by an electrophysiologist and entrepreneur, Gust H. Bardy, M.D., to overcome challenges in ambulatory cardiac monitoring.

7. BardyDx is the developer of an industry leading electrocardiography monitor called the CAM™ patch.

8. BardyDx is also the assignee of the entire right, title and interest in numerous United States patents, including U.S. Patent No. 11,051,743 ("the '743 patent") and U.S. Patent No. 11,445,967 ("the '967 patent").

9. The '743 patent is titled "Electrocardiography Patch" and was duly and legally issued on July 6, 2021. It is attached as Exhibit 1.

10. The '743 patent claims, among other things, an electrocardiography monitor comprising a backing including an elongated strip with a midsection connecting two ends of the backing. The mid-section is narrower than the two ends of the backing. An electrocardiographic electrode is on each end of the backing to capture electrocardiographic signals. A flexible circuit comprising a pair of circuit traces is electrically coupled to the electrocardiographic electrodes. The electrocardiography monitor also comprises a wireless transceiver to communicate a least a portion of the electrocardiographic signals, a battery on one of the ends of the backing, a processor powered by the battery, and a memory electrically interfaced with the processor and operable to store samples of the electrocardiographic signals.

11. The '967 patent is entitled is titled "Electrocardiography Patch" and was duly and legally issued on September 20, 2022. The '967 patent is attached as Exhibit 2.

12. The '967 patent claims, among other things, an apparatus comprising a flexible backing including an elongated strip. The elongated strip has a first end section, a second end section opposite the first end section, and a mid-section between the first end section and the second end

section. The elongated strip tapers inward from both sides such that the mid-section has a portion narrower than widest portions of the first end section and the second end section. The elongated strip also has a first surface and a second surface. A portion of the first surface is covered in adhesive to adhere the strip to skin of a patient. A flexible circuit is mounted to the second surface of the strip along the first end section and the second end section and is comprised of a first circuit trace and a second circuit trace. The patch also comprises only two electrocardiographic electrodes: a first electrocardiographic electrode and a second electrocardiographic electrode. The first electrocardiographic electrode and the second electrocardiographic electrode are coupled to and provided on the flexible circuit. The first electrocardiographic electrode is conductively exposed on the first surface along the first end section of the strip, and the second electrocardiographic electrode is conductively exposed on the first surface along the second end section of the strip. Also, the first circuit trace is electrically coupled to the first electrocardiographic electrode, and the second circuit trace is electrically coupled to the second electrocardiographic electrode. A non-conductive receptacle is mounted on the flexible circuit and is overlying only one of the first end section or the section end section of the elongated strip.  A battery is received in the non-conductive receptacle such that the battery overlies the one of the first end section or the second end section. An electrical connector is mounted to and electrically coupled to the flexible circuit.  A portion of the electrical connector is disposed between the flexible circuit and the battery, and the battery is in contact with the electrical connector. A wireless transceiver is overlying the first end section. A processor is overlying a portion of the flexible circuit on the first end section. The processor is electrically coupled to the first electrocardiographic electrode, the second electrocardiographic electrode, the wireless transceiver, and the battery. The processor is configured to process electrocardiographic signals sensed via the electrocardiographic electrodes.

**VitalConnect's Infringing Activities and Products**

13.     Upon information and belief, VitalConnect has and continues to infringe at least claims 11–20 of the '743 patent and at least claim 44 of the '967 patent in violation of § 271(a) by making, using, selling, and/or offering for sale in the United States the products referred to, advertised and/or sold under the names VitalPatch or VitalConnect Sensor, including without limitation the VitalPatch Biosensor, VitalPatch 1.0, VitalPatch 1.5, VitalPatch 2.0, VitalPatch RTM, and/or any other versions thereof that have been made, used, sold, and/or offered for sale in the United States by VitalConnect since the issuance of the '743 patent and the '967 patent ("the VitalPatch").

14.     The VitalPatch is a battery-operated, wearable device to collect physiological data including, for example, heart rate, electrocardiographic signals, respiratory rate, body temperature, skin temperature, and activity such as step count.  The VitalPatch includes, among other things, an adhesive patch, a pair of electrodes, at least one temperature sensor, a flexible circuit including circuit traces, a processor, an accelerometer, and a memory.  The VitalPatch also includes a Bluetooth transmitter to communicate at least a portion of electrocardiographic signals to another device, such as a server and/or an end user's computer or mobile device.  The VitalPatch further includes a non-conductive receptacle in which the batteries are received.  Documents describing additional details on the components, features, and uses of the VitalPatch are attached as Exhibits 3–8.

15.     As shown in the claim chart attached as Exhibit 9, the VitalPatch meets each and every element of at least claims 11–20 of the '743 patent, literally or under the doctrine of equivalents.

16.     As shown in the claim chart attached as Exhibit 10, the VitalPatch meets each and every element of at least claim 44 of the '967 patent, literally or under the doctrine of equivalents.

17.     Since the filing and service of BardyDx's Original Complaint (D.I. 1), VitalConnect

has indirectly infringed at least claims 11–20 of the '743 patent in violation of § 271(b) by actively and knowingly inducing patients to use the VitalPatch.

18. Since at least October 17, 2022, VitalConnect has indirectly infringed at least claim 44 of the '967 patent in violation of § 271(b) by actively and knowingly inducing patients to use the VitalPatch.

19. As an example of its induced infringement, upon information and belief, VitalConnect encloses in the VitalPatch packaging detailed instructions for patients to use the VitalPatch. VitalConnect also directs patients to access the instructions on its website through the following URL: https://vitalconnect.com/resources/#instructions. (*See also* Exhibits 4–7, 13).

20. The VitalPatch Instructions provide patients with step-by-step mandatory instructions for, among other things, adhering the VitalPatch onto a patient's body and connecting the VitalPatch to another device to capture, measure, communicate, process, store, and transmit physiological data. (*See id.*)

21. VitalConnect has had knowledge of the '743 patent and VitalConnect's infringement of the '743 patent since at least the filing and service of BardyDx's Original Complaint (D.I. 1).

22. In addition, on May 24, 2022, BardyDx sent a letter to VitalConnect further notifying VitalConnect of its infringement of the '743 patent. That letter is attached as Exhibit 11. In the letter, BardyDx provided additional details regarding how VitalConnect infringes the '743 patent, including how the VitalPatch includes a backing comprising an elongated strip. However, VitalConnect has continued to infringe the '743 patent by making, using, selling, and/or offering for sale in the United States the VitalPatch.

23. On October 17, 2022, BardyDx sent another letter to VitalConnect. The letter reiterated that VitalConnect has been and continues to willfully infringe the '743 patent and provided further evidence of the validity of the '743 patent. The letter is attached as Exhibit 12.

24. VitalConnect has had knowledge of the '967 patent and VitalConnect's infringement of the '967 patent since at least October 17, 2022, when BardyDx sent the letter attached as Exhibit 12 to VitalConnect. The letter notified VitalConnect of the '967 patent and VitalConnect's infringement of the '967 patent. In addition, the letter attached a claim chart demonstrating how the VitalPatch practices claims of the '967 patent. However, VitalConnect failed to cease its infringing activities and, instead, has continued to infringe the '967 patent by making, using, selling, and/or offering for sale in the United States the VitalPatch.

25. Furthermore, in November 2022—after VitalConnect had knowledge of the '743 patent and the '967 patent and VitalConnect's infringement of those patents—VitalConnect published another set of instructions for patients to use the VitalPatch in an infringing manner. The instructions provide patients with step-by-step mandatory instructions for, among other things, adhering the VitalPatch onto a patient's body and connecting the VitalPatch to another device to capture, measure, communicate, process, store, and transmit physiological data. Those instructions are attached as Exhibit 13.

26. VitalConnect has knowingly induced infringement of the '743 patent by end users and possessed specific intent to encourage the end users' infringement of the '743 patent since at least the filing and service of BardyDx's Original Complaint (D.I. 1), since its receipt of BardyDx's May 24, 2022 letter, or its receipt of BardyDx's October 17, 2022 letter.

27. VitalConnect has knowingly induced infringement of the '967 patent by end users and possessed specific intent to encourage the end users' infringement of the '967 patent since at

least October 17, 2022, the date on which VitalConnect received BardyDx's letter notifying VitalConnect of infringement of the '967 patent.

28. VitalConnect's infringement of the '743 patent has been knowing, intentional, and willful since at least the filing and service of BardyDx's Original Complaint (D.I. 1), its receipt of BardyDx's May 24, 2022 letter, or its receipt of BardyDx's October 17, 2022 letter.

29. VitalConnect's infringement of the '967 patent has been knowing, intentional, and willful since at least its receipt of BardyDx's October 17, 2022 letter.

## COUNT I
### (Infringement of the '743 Patent)

30. BardyDx incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 29.

31. This is a claim for patent infringement under 35 U.S.C. § 271.

32. VitalConnect has directly infringed and continues to directly infringe the '743 patent.

33. VitalConnect has induced infringement of the '743 patent since at least the filing and service of BardyDx's Original Complaint (D.I.1), its receipt of BardyDx's May 24, 2022 letter, or its receipt of BardyDx's October 17, 2022 letter.

34. VitalConnect's infringement has damaged and injured, and continues to damage and injure, BardyDx.

35. The injury to BardyDx from VitalConnect's continuing infringement is irreparable and will continue unless VitalConnect is enjoined from further infringement.

36. VitalConnect has had actual knowledge of the '743 patent since at least the filing and service of BardyDx's Original Complaint (D.I. 1), its receipt of BardyDx's May 24, 2022 letter, or its receipt of BardyDx's October 17, 2022 letter, yet VitalConnect continues to infringe the patent.

37. VitalConnect's knowing, intentional, and willful infringement justifies an increase

of up to three times the damages to be assessed pursuant to 35 U.S.C. § 285.

## COUNT II
### (Infringement of the '967 Patent)

38. BardyDx incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 29.

39. This is a claim for patent infringement under 35 U.S.C. § 271.

40. VitalConnect has directly infringed and continues to directly infringe the '967 patent.

41. VitalConnect has induced infringement of the '967 patent since at least its receipt of BardyDx's October 17, 2022 letter (attached as Exhibit 12) to VitalConnect.

42. VitalConnect's infringement has damaged and injured, and continues to damage and injure, BardyDx.

43. The injury to BardyDx from VitalConnect's continuing infringement is irreparable and will continue unless VitalConnect is enjoined from further infringement.

44. VitalConnect has had actual knowledge of the '967 patent since October 17, 2022, yet VitalConnect continues to infringe the patent.

45. VitalConnect's knowing, intentional, and willful infringement justifies an increase of up to three times the damages to be assessed pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, BardyDx respectfully requests the following relief:

1. Judgement in BardyDx's favor and against VitalConnect on all claims for relief alleged herein;

2. Preliminary and permanent injunctive relief, including orders from this Court prohibiting VitalConnect, and anyone acting or participating by, through or in concert with VitalConnect, from infringing the '743 patent and the '967 patent;

3. Damages in an amount to be further proven at trial, including trebling of all

damages with respect to infringement of the '743 patent and the '967 patent;

4.  Determination that this is an exceptional case under 35 U.S.C. § 285;

5.  Costs of suit incurred herein;

6.  Prejudgment interest;

7.  Attorneys' fees and costs; and

8.  Such other and further relief as the Court may deem to be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Bardy Diagnostics, Inc. hereby demands a trial by jury on all issues so triable.

POTTER ANDERSON CORROON LLP

/s/ *Philip A. Rovner*
Philip A. Rovner (#3215)
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19801
(302) 984-6000
provner@potteranderson.com

*Attorneys for Bardy Diagnostics, Inc.*

OF COUNSEL:

Stephen M. Hankins
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
(415) 275-8550

Louis A. Klapp
Michael H. Fleck
Edgar Matias
RILEY SAFER HOLMES & CANCILA LLP
70 W Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700

Dated: January 9, 2023